# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| DANIEL JAMES WILLIS | § |
| | § |
| V. | §     A-18-CV-0093-RP |
| | § |
| BASTROP COUNTY, et al. | § |

# REPORT AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ROBERT PITMAN
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant District Attorneys Bryan Goertz and Forrest Sanderson's Motion to Dismiss (Dkt. No. 10); Defendant Bastrop County and Bastrop County Commissioners Snowden, Klaus, Beckett and Pina's Motion to Dismiss (Dkt. No. 11); Defendant Bastrop County Sheriff Pickering, Deputy Davenport and Dispatcher Burse's Motion to Dismiss (Dkt. No. 12); and the various Response and Reply briefs. The District Court referred the above-motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

This case arises out of a fatal shooting that took place when the Bastrop County Sheriff's office responded to a domestic disturbance on February 16, 2014. Plaintiff Daniel Willis, then a Bastrop County deputy sheriff, was dispatched to a disturbance call at a residence, and ultimately Willis shot and killed Yvette Smith at the home. After an investigation by the Texas Rangers, Willis was indicted for murder. The case went to trial, and a mistrial was declared when the jury could not reach a verdict. The case was then re-tried to a judge, and Willis was acquitted. Willis now brings this case against the County, the Sheriff, and various County officials and employees, alleging that

they violated his civil rights, and committed a variety of state law torts, by prosecuting him for murder.

A.     **Factual Background**

Because the instant motions are filed under Rule 12(b)(6), the Court must take the allegations of the complaint as true. The following summary is thus based on the allegations of Willis' Complaint. In the early morning hours of February 16, 2014, Bastrop County deputy sheriff Daniel Willis was dispatched to the home of Willie Thomas to respond to a report of a family dispute. Amy Vela, who was inside the home, had called 911 to report that Thomas and his son were fighting with sledge hammers and that Thomas's girlfriend, Yvette Smith, was fighting with Thomas's son over a shotgun. Willis arrived at the residence at approximately 12:30 a.m. A few minutes after he arrived at the scene, Vela told the 911 operator that the gun had been put down. The Complaint alleges that though the 911 operator informed the Bastrop County dispatcher, Meghan Burse, of this fact, Burse never relayed that information to Willis, so he believed that the occupants inside the house were armed and dangerous. Willis alleges that as he approached the house, Yvette Smith opened the front door and walked onto the front porch, despite his warnings to her to stay inside the home. Willis then fired two shots from his SR-15 .223 assault rifle at Smith, killing her. Smith was unarmed. Willis contends that he "acted in self-defense because he was told there was someone behind the door with a loaded firearm, who then exited the house despite clear commands not to do so." Dkt. No. 2 at ¶ 20.[1]

---

[1]Defendants contend that Willis' dash cam video showed that after he arrived at the scene, he retrieved his assault rifle from his car and stationed himself behind a truck in the driveway. When Yvette Smith opened the front door and stepped onto the front porch, Willis yelled "police" and then three seconds later fired two shots, killing her. As noted, however, for the purposes of the present motions, the Court must take the allegations of the Complaint as true.

The shooting was investigated by the Texas Rangers, and was eventually presented to a Bastrop County grand jury. That grand jury indicted Willis for murder. The case was tried twice. The first trial resulted in a hung jury, while the second trial, which was without a jury, resulted in Willis' acquittal. Willis alleges that Sgt. James Davenport of the Bastrop County Sheriff's office provided the Rangers with inaccurate information related to the shooting, and never corrected that information. He also contends that "Sheriff Pickering and/or his office fabricated information" indicating Willis he had completed training in responding to family violence calls, "when, in fact, Officer Willis's training supervisor had not reported that training and altered Officer Willis's field training records." Dkt. No. 2 at ¶ 21. Willis also contends that the special prosecutor, Forrest Sanderson, failed to disclose potentially exculpatory evidence regarding expert opinions, and failed to disclose the criminal history of the dispatcher, in violation of *Brady v. Maryland*. He also complains of Sanderson's comments to the press after the first trial resulted in a hung jury.

Willis does not allege any specific wrongful actions of Bastrop County or its Commissioners in Willis' prosecution. He nonetheless seeks to hold them liable in this case. The basis for this is vague, and thus the Court quotes it verbatim here:

> The above errors and omissions are directly attributable to Forrest Sanderson, the Special Prosecutor who was lead prosecutor in this case; Terry Pickering, the prior sheriff of Bastrop County, and his employees; and imputedly to the Bastrop County Sheriff's Office, Bastrop County Commissioners and Bastrop County itself. As a result of these official acts by the Bastrop County Commissioners, Bastrop County Sheriff's Office, Bastrop County District Attorney's office, and Forrest Sanderson, Plaintiff former Officer Daniel Willis has endured public humiliation and reprisal, based on the prosecutor's statements and a trial resulting in a hung jury, resulting largely from the State's failure to disclose mitigating and exculpatory evidence, from 2/16/14 through 4/7/16. The Court ruled when Officer Willis was exonerated, that he was not guilty in the murder of Yvette Smith because he acted in self-defense, given the information presented to the Court during that trial. . . .

> Because the Bastrop County Sheriff's Office and its personnel operated under the control of the then Bastrop County Commissioners, listed hereinabove, and former Sheriff Terry Pickering and those persons, acting in their individual and official capacities, negligently supervised Bastrop County personnel, implemented or implicitly and explicitly approved Bastrop County official policies and procedures implemented at the time of the arrest and prosecutions of Daniel Willis and failed to correct the errors and omissions by the times of Officer Willis's first trial in September 2015 and his subsequent trial, these wrongful actions caused legal injury to Mr. Willis up to and including the date of 04/07/2016 and which continues through the date of the filing of this complaint.

Dkt. No. 2 at ¶¶ 26-27.[2]

The family of Yvette Smith also challenged the shooting, and filed a civil rights suit in this Court against Willis and Bastrop County. The Estate alleged that Willis used excessive force when he shot Smith, and that Bastrop County and the Sheriff failed to properly hire, train and supervise Willis, and were negligent in their oversight of Willis. The lawsuit eventually settled, and Ms. Smith's estate agreed to dismiss the case in exchange for a payment of $1.225 million.

**B.    The Instant Lawsuit**

Willis filed this case in February 2018. He brings claims under § 1983 against the County, the Sheriff, and a number of County employees. Willis brings due process claims under the Fourteenth Amendment, claims of unlawful arrest and detention under the Fourth Amendment, civil rights conspiracy charges under §§ 1983 and 1985, and contends the County should be held responsible for these actions under *Monell* because it failed to train and supervise their employees. He also brings state law claims of malicious prosecution, defamation, and negligent supervision.

---

[2] The quality of the briefing in this case—from all sides—is poor, which has made the Court's job here much more difficult. Just one example is the just-quoted passage. From that, it would appear that Willis is seeking to hold the "Bastrop County Sheriff's Office," and the "Bastrop County District Attorney's office" liable for the alleged wrongs here. But it is settled law that neither of those entities are capable of being sued, as these departments are non-jural entities under § 1983. *See e.g., Rambo v. Valdez*, 2016 WL 4398969, at *2 (N.D. Tex. May 6, 2016).

In short, Willis contends that the Defendants perpetrated a scheme to protect Bastrop County from civil liability by fabricating and covering up evidence and by failing to fully and properly investigate the charges against Willis. Willis contends that these Defendants prosecuted him in an effort to cover up the negligence of other Bastrop County employees and protect the County from civil liability. He alleges the Defendants:

> knew or should have known that Daniel Willis had committed no criminal offense, [and] Defendants, acting in concert under color of state law, conspired among themselves and reached a mutual understanding to arrest and charge Daniel Willis for offenses he did not commit, and cover up their misconduct, all in violation of clearly established constitutional rights.

Dkt. No. 2 at 13. In the motions before the Court, the Defendants request that the claims against them be dismissed pursuant to Rule 12(b)(6).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III. ANALYSIS

### A. The Prosecutors' motion

Bryan Goertz was the Bastrop County District Attorney at the time Willis was prosecuted, and Forrest Sanderson was the special prosecutor who led the prosecution of Willis, after Goertz recused himself. Willis sues Goertz and Sanderson, in their official and individual capacities, under §§ 1983 and 1985, claiming that they violated Willis' Fourth and Fourteenth Amendment rights under the Constitution and conspired against him by arresting, indicting and prosecuting him "for a crime he did not commit." Dkt. No. 2 at 10. He also alleges state law claims for malicious prosecution and defamation, and a negligent supervision claim against only Goertz alleging that he failed to properly train and supervise his employees.[3] Willis alleges that Sanderson made defamatory comments to the media after Willis' first trial resulted in a hung jury when Sanderson stated: "There is no question this defendant shot and killed another human being intentionally and knowingly, and by Texas law that is murder, unless there is some justification for it." Dkt. No. 2 at 7.

#### 1. **1983 Claims**

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff "must (1) allege a violation of a

---

[3]This claim is confusing, to say the least, as the Complaint reflects that Goertz recused himself fairly early in the investigation, the investigation was conducted by the Texas Rangers, and the case was prosecuted by a Special Prosecutor appointed by the state court. It is difficult to comprehend, therefore, how Goertz's supervision of anyone in the district attorney's office could have had any impact on Willis' prosecution.

6

right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). Plaintiffs "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658, 690 n. 55 (1978).

### a. Eleventh Amendment

To the extent Willis has sued them in their official capacities, Goertz and Sanderson assert that such claims are barred by the Eleventh Amendment. They are correct. "The Eleventh Amendment acts as a jurisdictional bar to a suit in federal court against a state or one of its agencies. This immunity applies unless it is waived by consent of a state or abrogated by Congress." *See Curry v. Ellis Cnty., Tex.*, 2009 WL 2002915, at *3 (N.D. Tex. July 10, 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). The Fifth Circuit has "stated on numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities" and are therefore protected by the Eleventh Amendment. *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009), *cert. denied*, 558 U.S. 1110 (2010); *see also Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997); *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir.1990). Congress has not abrogated the states' Eleventh Amendment immunity from suits under § 1983. *Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 71 (1989). Nor have Goertz or Sanderson done anything in this case to waive the State's immunity to suit based on their acts as prosecutors. Willis' claims against Goertz and Sanderson in their official capacities are therefore barred by the Eleventh Amendment.

      **b.**      **Absolute Immunity**

In their individual capacities, Sanderson and Goertz each claim that they are absolutely immune for any actions they took as prosecutors of the case against Willis. A prosecutor enjoys absolute immunity when his actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Absolute prosecutorial immunity is meant to "protect[ ] the prosecutor from harassing litigation that would divert his time and attention from his official duties" and to "enabl[e] him to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997) (quoting *Imbler*, 424 U.S. at 424). The Supreme Court has made it clear that "it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance." *Id.* The Supreme Court has found that "[a] prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as advocate for the state in the courts, or when her conduct is intimately associated with the judicial phase of the criminal process." *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).

"On the other hand, a prosecutor is afforded only qualified immunity for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (quoting *Buckley*, 509 U.S. at 273). Therefore, the Supreme Court has found that a prosecutor's allegedly defamatory out of court statements to the media were not entitled to absolute immunity since "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor."

*Buckley*, 509 U.S. at 277. In addition, the Supreme Court has found that a prosecutor's legal advice to police that a suspect's confession under hypnosis constituted probable cause was only entitled to qualified prosecutorial immunity since such actions were not "closely associated with the judicial process." *Burns v. Reed*, 500 U.S. 478, 495 (1991)

Applying the above principles to the facts of this case, all of the actions of Sanderson that Willis complains about (with the exception of his comments to the media), as well as all of Goertz's actions before his recusal, fall within the scope of absolute prosecutorial immunity. Prosecutors enjoy absolute immunity "for acts taken to initiate prosecution" and "[p]rosecutors may appeal to this immunity [even] in the face of allegations of the knowing use of perjured testimony and the withholding of exculpatory information." *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987). As the Fifth Circuit has declared: "Absolute immunity shelters prosecutors even when they act 'maliciously, wantonly or negligently.'" *Id.* (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir.1985)). Thus, the Fifth Circuit has held prosecutors absolutely immune for actions ranging from withholding exculpatory evidence, disobeying discovery orders, and fabricating evidence, to charging without probable cause pursuant to a constitutionally deficient indictment, and committing prosecutorial misconduct. *See Green*, 704 Fed. App'x at 386-87. All of Sanderson's and Goertz's prosecutorial actions are plainly barred by absolute prosecutorial immunity.

    c.    **Qualified Immunity**

Sanderson and Goertz assert that, to the extent any of their actions fall outside of the protection of prosecutorial immunity, those actions are nonetheless protected by qualified immunity. This includes Sanderson's statement to the press, and Goertz's actions after he recused himself from the prosecution. When the defendant invokes the doctrine of qualified immunity, the plaintiff has the burden to demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the

9

right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). With regard to Sanderson, Willis has not met this burden because he has failed to even respond to the qualified immunity defense. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (finding that plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment). This claim would also fail on its merits. In *Marrero v. City of Hialeah*, 625 F.2d 499, 511 (5th Cir. 1980), *cert. denied*, 450 U.S. 913 (1981), the Fifth Circuit specifically held that a prosecutor's statements to the media are entitled to qualified immunity in § 1983 actions challenging those statements. The Circuit reasoned "An official who, as a part of his discretionary functions, is charged with making public statements would be unduly inhibited in the exercise of that duty if he were not afforded some degree of immunity for statements issued in the discharge of his duty." *Id.*

Similarly, Goertz is entitled to qualified immunity with regard to any claims alleged against him in his investigative or administrative capacity based on actions he took after he recused himself from Willis' criminal case. Willis has failed to allege sufficient facts to show that Goertz violated a clearly established statutory or constitutional right. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). Accordingly, Goertz is immune from Willis' claims under § 1983 that concern non-prosecutorial acts.

### 2. § 1985 Claim

Willis also sues Goertz and Sanderson under 42 U.S.C. § 1985(2), claiming they engaged in a conspiracy to arrest and prosecute him for an offense he did not commit. Section 1985(2) prohibits conspiracies to deny a citizen of equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection. 42 U.S.C. § 1985(2). However, to state a viable claim

under § 1985(2) the plaintiff must demonstrate that the conspiracy was motivated by a class-based discriminatory animus. *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 687 (5th Cir.), *cert. denied*, 562 U.S. 893 (2010). As the Fifth Circuit explained, the "language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or . . . class-based, invidiously discriminatory animus behind the conspirator's action." *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis in original)). Willis makes no allegation that Goertz's or Sanderson's actions were based on racial or class-based discriminatory animus. His claim under § 1985(2) fails as a result.

### 3. State Claims

Defendants allege that Willis' state claims should be dismissed because they are entitled to official immunity and any tort claims against them are barred under the Texas Tort Claims Act. Willis failed to respond to these arguments and has thus abandoned his state law claims. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d at 126. Accordingly, Willis' malicious prosecution, defamation and negligent supervision claim against Goertz and Sanderson should be dismissed.[4]

Based upon the foregoing, the Court finds that Defendants Goertz and Sanderson's Motion to Dismiss (Dkt. No. 10) should be granted in its entirety.

### B. The Bastrop County Sheriff Employees' Motion

Willis sues Bastrop County Sheriff Terry Pickering and Deputy James Davenport under §§ 1983 and 1985, in their official and individual capacities, claiming they violated his Fourth and Fourteenth Amendment rights under the Constitution and conspired against him by arresting, indicting

---

[4]The Fifth Circuit does not recognize a federal cause of action for malicious prosecution. *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009). Rather, violations of specific constitutional rights occurring in relation to a "malicious prosecution" can be redressed pursuant to those individual constitutional protections and not under the broad category of malicious prosecution. *Id.*

and prosecuting him "for a crime he did not commit." Dkt. No. 2 at 10. Willis also sues Sheriff Pickering for failing to properly train and supervise his employees, and sues both for malicious prosecution and defamation.[5]

### 1. § 1983 Claim

Willis sues Pickering and Davenport in both their official and individual capacity. Willis' 1983 claims against Pickering and Davenport are two-fold. First, he alleges that they violated his rights under the Fourteenth Amendment by engaging in a scheme "designed to protect Bastrop County from civil liability resulting from the negligence of Bastrop County employees . . . by prosecuting Daniel Willis," and by "failing to fully and properly investigate the charges against Daniel Willis." Dkt. No. 2 at ¶ 30. Second, Willis alleges that Pickering and Davenport violated his Fourth Amendment rights by unlawfully arresting and detaining him, and causing his arrest and detention, without probable cause. When parsed, it is challenging, if not impossible, to distinguish the two § 1983 claims, as both complain that the Defendants wrongfully investigated and prosecuted Willis.

The Fifth Circuit has held that although there is no "freestanding constitutional right to be free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003), *cert. denied*, 543 U.S. 808 (2004). In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court said that malicious prosecution claims must be based on the Fourth Amendment, rather than on "the more

---

[5]Though Willis names Dispatcher Meghan Burse as a defendant in the case, he fails to identify her as a defendant in any of the numbered counts of the indictment, nor does he allege a single act by her in support of any of his claims. The closest he comes is to identify her as an employee he contends Bastrop County and Sheriff Pickering failed to adequately train. *See* Dkt. No. 2 at ¶ 51. As there are *no* facts stated in the Complaint to support a claim against Burse, she is clearly entitled to dismissal of the case against her for failure to state a claim.

12

generalized notion of 'substantive due process,'" because the Fourth Amendment is the explicit textual source against this type of government behavior. *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Accordingly, though Willis purports to bring his § 1983 claim under both the Fourth and Fourteenth Amendments, under Supreme Court precedent the claim should be treated as a Fourth Amendment claim only, and the Court will analyze Willis' claims under the Fourth Amendment.

### a.    Official Capacity Claim

To the extent Willis sues Pickering and Davenport under § 1983 in their official capacity, the claim is redundant of the § 1983 claim against Bastrop County. "An official-capacity lawsuit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). When an individual is sued is his official capacity, liability is imposed "on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." *Id.* Where a plaintiff brings claims against both a public officer in his official capacity and the public entity for which he works, the claims "essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). And, when this occurs, the court may dismiss the claims against the public official as duplicative. *Flores v. Cameron Cty.*, 92 F.3d 258, 261 (5th Cir. 1996). Accordingly, Willis' claims against the Sheriff's office employees in their official capacities should be dismissed.

### b.    Qualified Immunity

Willis' individual capacity claims under § 1983 allege that Pickering and Davenport unlawfully arrested and detained him in violation of his Fourth Amendment rights. He further alleges that Pickering and Davenport violated his Fourteenth Amendment rights by failing to fully and properly investigate the case, which would have revealed his innocence. As already noted, both claims are to

13

be analyzed as Fourth Amendment claims. Pickering and Davenport raise the defense of qualified immunity with regard to these claims. As noted earlier, qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). With regard to the Fourth Amendment claim, to overcome the qualified immunity defense, Willis must show that the Defendants did not have probable cause to arrest him. *Lock v. Torres*, 694 F. App'x 960, 964 (5th Cir. 2017), *cert. denied*, 138 S.Ct. 662 (2018).

In this case, the Court need consider whether the Complaint alleges a plausible claim that probable cause was lacking here, because an independent intermediary—the grand jury—made its own conclusion that there was probable cause to believe that Willis murdered Yvette Smith. That decision by the grand jury breaks the chain of causation for any Fourth Amendment violation Pickering or Davenport may have committed. *See Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011) ("Under [the independent-intermediary doctrine], if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation."). Willis has failed to allege that either Pickering or Davenport did anything to mislead or otherwise wrongly cause the grand jury to reach its decision. The § 1983 claims against Pickering and Davenport should thus be dismissed.

    **c.**    **Failure to Train**

Willis also sues Sheriff Pickering under § 1983, alleging that he failed to adequately train his employees, which led to Willis' false arrest. To prevail on a failure to train or supervise claim against supervisory officials, Plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation

of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-912 (5th Cir. 1998)), *cert. denied*, 558 U.S. 1148 (2010).

For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To establish deliberate indifference, a plaintiff must allege facts which demonstrate that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390 (1989). To show deliberate indifference in this context, a plaintiff must demonstrate "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (internal citations omitted), *cert. denied*, 540 U.S. 1108 (2004). Willis' Complaint contains no facts whatsoever regarding any alleged pattern of similar violations to those he contends plagued his prosecution, as required by *Burge*. Without any such pattern, as a matter of law he cannot show the deliberate indifference necessary to support his failure to train claim.

### d. Conspiracy Claim

Willis also sues the Sheriff's office defendants for conspiracy under § 1983. To state a § 1983 conspiracy claim, a plaintiff must allege facts to support (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. The plaintiff must show that the defendants agreed to commit actions that violated the plaintiff's constitutional rights. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). A bald

15

allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient to state a claim. *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties). In this case, other than conclusory allegations, Willis does not allege anything more than a bald allegation that there was a conspiracy to prosecute him to somehow avoid county liability for the shooting. Further, "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (citations and quotations omitted). There must be an actual deprivation of a constitutional right before a conspiracy to deny such a right arises. *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960), *cert. denied*, 366 U.S. 955 (1961). As just discussed, because there was an independent intermediary that found probable cause to support the charge against Willis, there can be no causal link between Pickering or Davenport's actions and Willis' constitutional injury. Without an actual violation of a constitutional right as a result of the supposed conspiracy, the § 1983 conspiracy claim fails.

       **3.    § 1985(2) Conspiracy Claim**

As explained with respect to the claims against Goertz and Sanderson, Willis's civil conspiracy claim under § 1985(2) fails because he does not allege that he is in a protected class. This same defect supports the dismissal of the § 1985 claim against Pickering and Davenport.

       **4.    State Claims**

With regard to Willis' claims made under state law—his malicious prosecution, defamation and negligent supervision claims—the Sheriff's office defendants moved for dismissal on the basis of official immunity under state law, and further contended that any state tort claims are barred by the Texas Tort Claims Act. Willis failed to respond to these arguments and has thus abandoned the

claims. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d at126. Accordingly, Willis' state law claims against these defendants should be dismissed.

**C.     Bastrop County and its Commissioners' Motion**

Willis alleges that Bastrop County and the County Commissioners are liable for the § 1983 violations of the County employees under *Monell* as a result of alleged policies and customs that led to the constitutional violations. Willis also sues the County defendants under § 1985(2), contending they conspired to arrest and prosecute Willis for an offense he did not commit, and he sues them under state law for malicious prosecution, defamation, and negligent supervision.

Under § 1983, a municipality like Bastrop County may be held liable for constitutional violations committed by its employees only if the plaintiff demonstrates that the violations resulted from a municipal custom or policy. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-94 (1978). This requires demonstrating: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)), *cert. denied*, 537 U.S. 1110 (2003).

As discussed above, Willis has failed to allege a plausible constitutional violation in this case because he has not alleged any infirmity in the grand jury's independent determination that there was probable cause to believe Willis committed murder. *Monell* only allows a municipality to be held liable for a constitutional violation of one of its employees. Without a violation, there is nothing to hold the municipality liable for. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing."). Because of the independent acts of the grand jury, there is no constitutional violation, so there can be

no *Monell* liability in this case. *See Travis v. City of Grand Prairie, Texas*, 654 F. App'x 161, 165 (5th Cir. 2016) (holding that plaintiff failed to allege a constitutional violation because he did not sufficiently allege the officers lacked probable cause to arrest him and, therefore, he failed to identify a constitutional violation that could support a finding of municipal liability under *Monell*).

With respect to the County Commissioners, the Complaint is very thin on facts. Indeed, it is not entirely clear what Willis' theory of liability is concerning the Commissioners. The clearest statement of the theory alleges they are liable because of "the conspiratorial decision, in which the commissioners participated in making, both personally and as The County of Bastrop, to have Plaintiff prosecuted." Dkt. No. 16 at 3. Regardless, the bottom line is this. To the extent that Willis sues the Commissioners in their official capacities, his claim against them merges with his claim against Bastrop County, and is redundant of that claim. And as for individual liability, because there is no respondeat superior liability under § 1983, the Commissioners may only be held liable if they were *individually* involved in the alleged constitutional violations. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) ("Supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . [r]ather, Plaintiffs must show that the conduct of the supervisors denied [Plaintiff] his constitutional rights."). The Complaint is silent with regard to any alleged individual actions of the Commissioners. Indeed, the Complaint always refers to them in the aggregate, and never singles any of them out, nor alleges they individually ever did anything related to the investigation or prosecution of Willis. Without any such allegations, the Complaint fails to state a claim under § 1983 against the Commissioners in their individual capacities. The § 1983 claims against the Commissioners should therefore be dismissed.

### 3. § 1985(2) and state law claims

For the same reasons as the § 1985 and state law claims fail against the other defendants, Willis' § 1985(2) and state law claims against the County and its Commissioners also fail, and should thus be dismissed for failure to state a claim.

## IV. RECOMMENDATION

In light of the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant District Attorneys Bryan Goertz and Forrest Anderson's Motion to Dismiss (Dkt. No. 10) because (1) Plaintiff's § 1983 claims against Goertz and Sanderson in their official capacities are barred by the Eleventh Amendment; (2) Plaintiff's § 1983 claims against Goertz and Sanderson in their individual capacity are barred by absolute prosecutorial immunity and qualified immunity; (3) Plaintiff's § 1985 claim fails to allege he is in a protected class; (4) and Plaintiffs' state law were abandoned.

The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT** Defendant Bastrop County Sheriff Pickering, Deputy Davenport and Dispatcher Burse's Motion to Dismiss (Dkt. No. 12) because (1) Plaintiff's § 1983 claims against these Defendants in their official capacity are duplicative of his claims against Bastrop County; (2) Plaintiff's § 1983 claims against these Defendants in their individual capacity are barred by qualified immunity; (3) Plaintiff's § 1983 failure to train claim against Pickering fails to sufficiently allege deliberate indifference; (4) Plaintiff's § 1983 conspiracy claim fails to allege non-conclusory allegations; and (5) Plaintiff's § 1985 claim fails to allege he is in a protected class; (6) and Plaintiffs' state law claims were abandoned.

The undersigned **FINALLY RECOMMENDS** that the District Court **GRANT** Defendant Bastrop County and Bastrop County Commissioners Snowden, Klaus, Beckett and Pina's Motion to Dismiss (Dkt. No. 11) because (1) there is no *Monell* claim against Bastrop County because Plaintiff

has failed to establish an underlying constitutional violation; (2) Plaintiff's § 1983 claims against the Commissioners in their official capacity is duplicative of the claim against the County; (3) the § 1983 claim against the Commissioners in their individual capacity is barred by the lack of any allegations the Commissioners were involved in the investigation or prosecution; (4) Plaintiff's § 1985 claim fails to allege he is in a protected class; (5) Plaintiffs' state law claims were abandoned.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 17th day of January, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE